**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **TRAILBOSS ENTERPRISES, INC.,** | : | |
| **An Alaska Corporation,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.: 5:21-cv-00113-TES** |
| **v.** | : | |
| | : | |
| **LAKOTA SOLUTIONS, LLC,** | : | |
| **A Georgia Limited Liability Company,** | : | |
| | : | |
| **Defendant.** | : | |

---

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF**
**DEFENDANT LAKOTA SOLUTIONS, LLC**

COMES NOW, Lakota Solutions, LLC (hereinafter referred to as "Defendant" or "Lakota"), Defendant in the above captioned action, and files its Answer, Affirmative Defenses, and Counterclaim to Plaintiff Trailboss Enterprises, Inc.'s (hereinafter referred to as "Plaintiff" or "Trailboss") Complaint and the allegations contained therein, and shows this Court as follows:

**I.       ANSWER AND AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

Plaintiff's Complaint fails to state a claim for which relief can be granted, and should therefore be dismissed.

**SECOND DEFENSE**

Defendant pleads the equitable defenses of estoppel, laches, and unclean hands to the extent the evidence so provides.

**THIRD DEFENSE**

Defendant pleads the defenses of modification, breach, accord and satisfaction, novation, acceptance, acquiescence, ratification, reformation, rescission, performance, lack of standing, and waiver to the extent the evidence so provides.

**FOURTH DEFENSE**

Defendant explains that it has not been unjustly enriched as alleged, but instead received what was expressly bargained for, as did Plaintiff, and that Plaintiff, by its own failures, created the present situation.

**FIFTH DEFENSE**

Defendant explains that Plaintiff is not able to recover from Defendant under the theories asserted or any theory, as Plaintiff's incurable breaches, failures, non-performances, and wrongful acts pre-date any alleged wrongdoing on the part of Defendant, including, but not limited to, Plaintiff's repeated failures, mismanagement, and mishandling of employee money with regard to withholdings ("Elective deferral contributions") from employee compensation for purposes of employee contributions to their 401(k) plans.

**SIXTH DEFENSE**

Defendant explains that it, at all times relevant to this litigation, exercised the degree of care expected and owed in the performance of its duties and obligations at issue and otherwise, and further has in no way been stubbornly litigious or acted in bad faith.

**SEVENTH DEFENSE**

Defendant explains that the evidence will reveal that Plaintiff's claim for intentional interference of contract must fail as Defendant would not be considered a stranger to such contract, among other reasons.

## EIGHTH DEFENSE

Defendant has at all times relevant hereto acted in good faith and fair dealing and has complied with and fulfilled any and all obligations or duties, contractual or otherwise, and was justified in all actions it undertook.

## NINTH DEFENSE

Defendant had no obligation or duty to give notice, contractual or otherwise, as alleged by Plaintiff, nor did it have to provide Plaintiff a chance to cure its repeated and continued contractual breaches, failures, non-performance, and/or wrongful activities, which were irreversible and un-curable in nature.

## TENTH DEFENSE

Defendant fulfilled any and all obligations with regard to the giving of notices and further explains that Plaintiff was on notice and admittedly fully aware of its failures with regard to the handling or mishandling of employee funds, which, among other things, ran afoul of ERISA, its fiduciary relationship with its employees, and the express language of agreements at issue, long before Defendant became aware of same. Plaintiff is therefore not in a position to argue a lack of knowledge or notice and is unable to recover from this Defendant in any amount whatsoever.

## ELEVENTH DEFENSE

Defendant explains that venue may exclusively lie in Houston County, Georgia as contemplated by the parties to the Subcontract at issue, and therefore asserts and preserves the defenses of improper venue and forum non conveniens.

## TWELFTH DEFENSE

Defendant intends to rely upon and invoke any and all other defenses that may become available as this case moves forward – including, but not limited to, Federal Rules of Civil Procedure 8 and 12 – and reserves its right to amend this pleading to assert same if warranted.

## THIRTEENTH DEFENSE

Plaintiff cannot recover of this Defendant as Plaintiff has suffered no damages as a result of any action or inaction by Defendant and/or Plaintiff has failed to mitigate its damages, if any.

## FOURTEENTH DEFENSE

Defendant shows that the sole proximate cause of any alleged damage or injury which is the subject of this litigation was the negligence, breach, or other failures of a person(s) or entity(ies) other than itself, including Plaintiff, and therefore it is not indebted to Plaintiff in any amount whatsoever.

## FIFTEENTH DEFENSE

Plaintiff cannot recover from this Defendant in this action due to the failure(s) of conditions precedent and subsequent.

## SIXTEENTH DEFENSE

The subcontract at issue was by its own language a "Fixed Labor Hour (LH) Contract," and as such the notice provisions referenced by Plaintiff in its Complaint do not apply. The subcontract at issue also does not have any such notice requirement as alleged by Plaintiff.

## SEVENTEENTH DEFENSE

The only potential remedy available for the alleged notice failure would be a determination by this Court as to whether the subcontract should be reinstated. Plaintiff is not entitled to seek an award of monetary damages under the terms of the subcontract.

**EIGHTEENTH DEFENSE**

Plaintiff was not qualified to bid on the Eglin Air Force project at issue in this case, and would not have been involved in any capacity with this project without the relationship with Defendant. Plaintiff received the benefit of this relationship, and the Eglin Air Force project contract was awarded as was the goal. Plaintiff suffered no injury whatsoever and is not able to recover of this Defendant as both parties to the Teaming Agreement got what they bargained for and desired – the award of the Eglin Air Force project contract.

**NINETEENTH DEFENSE**

Defendant responds to the numbered paragraphs of Plaintiff's Complaint as follows:

1.

Defendant denies any allegations that may be contained in paragraph number 1 of Plaintiff's Complaint.

2.

Defendant denies the allegations contained in paragraph 2 of Plaintiff's Complaint. Defendant explains that the subcontract entered into between Lakota and Trailboss speaks for itself and by its terms contains various obligations and responsibilities.

3.

Defendant denies any allegations contained in paragraph number 3 of Plaintiff's Complaint, and objects to Plaintiff's attempt to generalize the terms of the subcontract to the extent that such is different from that contained in the actual subcontract itself, which speaks for itself. By way of further response, the Collective Bargaining Agreement ("CBA") with the union (IAMAW), which was entered into after the subcontract was entered, made Plaintiff and

Defendant jointly responsible for obligations. (See a true and accurate copy of the CBA attached hereto as Exhibit "A").

4.

Defendant denies the allegations contained in paragraph 4 of Plaintiff's Complaint.

5.

Defendant denies the allegations as stated in paragraph 5 of Plaintiff's Complaint. Responding further, Defendant does explain that Plaintiff was involved in the process that led to the Air Force contract involving Eglin Air Force Base being awarded. However, Defendant was also significantly involved in the process that ultimately led to the award of the Air Force contract.

6.

Defendant denies the allegations contained in paragraph 6 of Plaintiff's Complaint.

7.

Defendant denies the allegations contained in paragraph 7 of Plaintiff's Complaint. By way of further response, Defendant states that Plaintiff repeatedly breached its contractual obligations to its employees, failed to notify Defendant of such breaches, requested an opportunity to cure, were given that chance, and then still failed to correct the ongoing and continuous breaches.

8.

Defendant denies the allegations contained in paragraph 8 of Plaintiff's Complaint. By way of further response, Defendant terminated the subcontract pursuant to its terms and as allowed by same.

9.

Defendant denies the allegations contained in paragraph 9 of Plaintiff's Complaint as stated. By way of further response, Lakota did not communicate with former employees of Plaintiff until after the subcontract had been terminated.

10.

Defendant denies the allegations contained in paragraph 10 of Plaintiff's Complaint.  By way of further response, Defendant is without knowledge or information sufficient to admit or deny the allegations concerning timing of certain knowledge obtained by Plaintiff.

11.

Defendant denies the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.

Defendant denies the allegations contained in paragraph 12 of Plaintiff's Complaint.

13.

Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 13 of Plaintiff's Complaint. Responding further, Defendant does believe that Plaintiff's principal place of business is currently located in Alaska.

14.

Defendant admits that it is a limited liability company organized here in the state of Georgia and that its principal place of business is located in Warner Robins, Houston County, Georgia. Responding further, Defendant does not believe that any of its members are citizens of Alaska.

15.

Based on information currently available, Defendant believes that this Court would have subject matter jurisdiction based on diversity and the amount in controversy.

16.

Defendant admits that this Court has personal jurisdiction over Defendant based on it being a Georgia LLC with its principal place of business located in Warner Robins, Georgia.

17.

Defendant admits that venue could be proper in this Court based on presently available information concerning diversity and amount in controversy. However, as stated above, the subcontract at issue indicates that Houston County is the proper venue.

18.

Defendant denies any allegations that may be contained in paragraph 18 of Plaintiff's Complaint. Responding further, Defendant does believe that the October 7, 2017 date referenced therein is generally an accurate reflection of when the request for proposal was issued by the Air Force.

19.

Defendant denies any allegations that may be contained in paragraph 19 of Plaintiff's Complaint. Responding further, Defendant explains that Title 48 and Chapter 1 of the Code of Federal Regulations set forth certain policies and procedures that come into play during the process of awarding contracts, and that said codes and regulations speak for themselves.

20.

Defendant denies any allegations contained in paragraph 20 of Plaintiff's Complaint. Responding further, Defendant explains that the solicitation from the Air Force did request

proposals regarding the providing of aerospace ground equipment maintenance services at Eglin Air Force Base in Florida.

21.

Defendant admits the allegations contained in paragraph 21 of Plaintiff's Complaint.  As stated above, Plaintiff was not entitled to bid on this 8(a) Program contract at issue.

22.

Defendant admits that that the Solicitation from the Air Force regarding Eglin Air Force Base contemplated a six-month base period, six one-year option periods, and two additional six-month option periods, and that the terms and provisions of same speak for themselves. Defendant denies the remaining allegations contained in paragraph 22 of Plaintiff's Complaint.

23.

Defendant admits the allegations contained in paragraph 23 of Plaintiff's Complaint.

24.

Defendant denies the allegations contained in paragraph 24 of Plaintiff's Complaint as stated. Responding further, Defendant again explains that it did enter into what was titled a "Teaming Agreement" in October 2017 with Plaintiff, and that Plaintiff was not entitled to bid on this 8(a) Program contract at issue.

25.

Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 25 of Plaintiff's Complaint.

26.

Defendant denies the allegations contained in paragraph 26 of Plaintiff's Complaint as stated. Responding further, Defendant explains that the contract with Eglin Air Force Base to provide AGE maintenance services was Defendant's first contract of that specific nature.

27.

Defendant denies the allegations contained in paragraph 27 of Plaintiff's Complaint.

28.

Defendant denies any allegations contained in paragraph 28 of Plaintiff's Complaint. Responding further, the "Teaming Agreement" between Plaintiff and Defendant and the terms and provisions of same speak for themselves.

29.

Defendant denies any allegations contained in paragraph 29 of Plaintiff's Complaint. Responding further, the "Teaming Agreement" between Plaintiff and Defendant and the terms and provisions of same speak for themselves.

30.

Defendant denies the allegations contained in paragraph 30 of Plaintiff's Complaint.

31.

Defendant denies the allegations contained in paragraph 31 of Plaintiff's Complaint.

32.

Defendant admits that the "Teaming Agreement" referenced includes the quoted language. Defendant denies any remaining allegations contained in paragraph 32 of Plaintiff's Complaint.

33.

Defendant denies the allegations contained in paragraph 33 of Plaintiff's Complaint. See the quoted language from paragraph 32 of Plaintiff's Complaint.

34.

Defendant denies the allegations of paragraph 34 of Plaintiff's Complaint.

35.

Defendant admits that the proposal was delivered by Defendant on the date stated. Defendant denies the remaining allegations contained in paragraph 35 of Plaintiff's Complaint.

36.

Defendant admits that it was awarded Air Force Contract No. FA2486-18-C-0006 on or about June 21, 2018. Defendant further admits that it appears that Exhibit B to Plaintiff's Complaint is a copy of that contract. Defendant denies the remaining allegations of paragraph 36 of Plaintiff's Complaint.

37.

Defendant denies any allegations contained in paragraph 37 of Plaintiff's Complaint. Responding further, Defendant explains that is does believe that there were two separate bid protests submitted regarding the Eglin Air Force project and the award of same to Defendant, and further explains that it received notice from the Air Force on or about January 1, 2019 that it was okay for Defendant to proceed with the contract.

38.

Defendant admits that on or about January 1, 2019 it entered into a subcontract with Plaintiff in regards to the Eglin Air Force Base project. Defendant further explains that it appears that a copy of this subcontract is attached as Exhibit C to Plaintiff's Complaint.

11

39.

Defendant denies any allegations contained in paragraph 39 of Plaintiff's Complaint. Responding further, Defendant recognizes that Georgia law does place certain duties and responsibilities upon contracting parties.

40.

Defendant denies any allegations contained in paragraph 40 of Plaintiff's Complaint. Responding further, Defendant recognizes that Georgia law does place certain duties and responsibilities upon contracting parties.

41.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 41 of Plaintiff's Complaint.

42.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 42 of Plaintiff's Complaint. Responding further, Defendant explains that there is no requirement or guarantee that the Air Force will exercise the options referenced.

43.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 43 of Plaintiff's Complaint.

44.

Defendant denies the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 45 of Plaintiff's Complaint.

46.

Defendant explains that the Teaming Agreement and terms thereof speak for themselves and denies any allegations against it that may be contained in paragraph 46 of Plaintiff's Complaint.

47.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 47 of Plaintiff's Complaint.

48.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 48 of Plaintiff's Complaint.

49.

Defendant denies the allegations contained in paragraph 49 of Plaintiff's Complaint.

50.

Defendant explains that the subcontract speaks for itself and denies any allegations against it contained in paragraph 50 of Plaintiff's Complaint.

51.

Defendant denies the allegations contained in paragraph 51 of Plaintiff's Complaint.

52.

Defendant admits that Plaintiff did prepare and deliver some policies and procedures. Defendant further explains that it prepared other policies and procedures that were required to be

submitted to the Air Force. Defendant denies the remaining allegations of paragraph 52 of Plaintiff's Complaint.

53.

Defendant admits that it did submit the referenced policies and procedures listed in paragraph 52 of Plaintiff's Complaint to the Air Force as required by its contract with the Air Force. Defendant denies the remaining allegations of paragraph 53 of Plaintiff's Complaint.

54.

Defendant denies the allegations contained in paragraph 54 of Plaintiff's Complaint.

55.

Defendant denies the allegations contained in paragraph 55 of Plaintiff's Complaint.

56.

Defendant admits the history of the negotiations of the CBA as explained in paragraph 56 of Plaintiff's Complaint, and that the CBA was ultimately entered into. Defendant denies the remaining allegations contained in paragraph 56.

57.

Defendant is unable to admit or deny the order of occurrence as explained in paragraph 57 of Plaintiff's Complaint and denies any allegations contained therein, but does explain that a collective bargaining agreement with the IAMAW was entered into in June 2019.

58.

Defendant denies the allegations contained in paragraph 58 of Plaintiff's Complaint.

59.

Defendant denies the allegations contained in paragraph 59 of Plaintiff's Complaint.

60.

Defendant denies the allegations contained in paragraph 60 of Plaintiff's Complaint.

61.

Defendant admits the allegations of paragraph 61 of Plaintiff's Complaint.

62.

Defendant admits that Exhibit D to Plaintiff's Complaint is a true and accurate copy of the March 11, 2020 letter and that such speaks for itself.

63.

Defendant admits that Exhibit D to Plaintiff's Complaint is a true and accurate copy of the March 11, 2020 letter and such speaks for itself.

64.

Defendant admits that Exhibit D to Plaintiff's Complaint is a true and accurate copy of the March 11, 2020 letter and that such speaks for itself.

65.

Defendant denies the allegations contained in paragraph 65 of Plaintiff's Complaint.

66.

Defendant admits that Exhibit D to Plaintiff's Complaint is a true and accurate copy of the March 11, 2020 letter and that such speaks for itself.

67.

Defendant denies the allegations contained in paragraph 67 of Plaintiff's Complaint.

68.

Defendant denies the allegations contained in paragraph 68 of Plaintiff's Complaint.  By way of further response, Defendant did meet with former employees of Plaintiff to inform them

of the termination of the subcontract after the termination letter had been sent by Defendant to Plaintiff.

69.

Defendant denies the allegations contained in paragraph 69 of Plaintiff's Complaint.

70.

Defendant denies the allegations contained in paragraph 70 of Plaintiff's Complaint.

71.

Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 71 of Plaintiff's Complaint.

72.

Defendant admits that it employed former employees of Plaintiff after the termination of the subcontract. Defendant denies the remaining allegations contained in paragraph 72 of Plaintiff's Complaint.

73.

Defendant denies the allegations contained in paragraph 73 of Plaintiff's Complaint.

74.

Defendant denies the allegations contained in paragraph 74 of Plaintiff's Complaint.

75.

Defendant incorporates herein its responses above to paragraphs 1 through 74 of Plaintiff's Complaint.

76.

Defendant admits that it entered into the subcontract with Plaintiff. Defendant denies any remaining allegations that may be contained in paragraph 76 of Plaintiff's Complaint.

77.

Defendant denies the allegations of paragraph 77 of Plaintiff's Complaint.

78.

Defendant denies the allegations of paragraph 78 of Plaintiff's Complaint.

79.

Defendant denies the allegations of paragraph 79 of Plaintiff's Complaint.

80.

Defendant denies the allegations of paragraph 80 of Plaintiff's Complaint.

81.

Defendant denies the allegations of paragraph 81 of Plaintiff's Complaint.

82.

Defendant incorporates herein its responses above to paragraphs 1 through 81 of Plaintiff's Complaint.

83.

Defendant denies any allegations contained in paragraph 83 of Plaintiff's Complaint. Responding further, Defendant recognizes that Georgia law places certain requirements of good faith and fair dealing on parties to contractual relationships.

84.

Defendant denies any allegations contained in paragraph 84 of Plaintiff's Complaint. Responding further, recognizes that Georgia law places certain requirements of good faith and fair dealing on parties to contractual relationships.

85.

Defendant denies the allegations contained in paragraph 85 of Plaintiff's Complaint.

86.

Defendant denies the allegations contained in paragraph 86 of Plaintiff's Complaint.

87.

Defendant denies the allegations contained in paragraph 87 of Plaintiff's Complaint.

88.

Defendant denies the allegations contained in paragraph 88 of Plaintiff's Complaint.

89.

Defendant denies the allegations contained in paragraph 89 of Plaintiff's Complaint.

90.

Defendant incorporates herein its responses above to paragraphs 1 through 89 to Plaintiff's Complaint.

91.

Defendant denies any allegations contained in paragraph 91 of Plaintiff's Complaint. Responding further, Defendant explains that Plaintiff did perform certain services and obligations pursuant to its subcontract with Defendant.

92.

Defendant denies any allegations contained in paragraph 92 of Plaintiff's Complaint as stated. Responding further, Defendant explains that, as is the underlying purpose of all contractual relationships, both parties received agreed upon benefits from their involvement in the Teaming Agreement and the subcontract.

93.

Defendant denies the allegations contained in paragraph 93 of Plaintiff's Complaint.

94.

Defendant denies the allegations contained in paragraph 94 of Plaintiff's Complaint.

95.

Defendant denies the allegations of paragraph 95 of Plaintiff's Complaint.

96.

Defendant denies the allegations of paragraph 96 of Plaintiff's Complaint.

97.

Defendant incorporates its responses above to paragraphs 1 through 96 of Plaintiff's Complaint.

98.

Defendant denies the allegations of paragraph 98 of Plaintiff's Complaint as stated. Responding further, Defendant does explain that it and Plaintiff entered into the Teaming Agreement attached as Exhibit A and the subcontract attached as Exhibit B.

99.

Defendant denies the allegations of paragraph 99 of Plaintiff's Complaint to the extent they differ from the terms of the subcontract entered into between the parties. Responding further, Defendant explains that the 51% / 49% workshare arrangement is what the terms of the subcontract stated.

100.

Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 100 of Plaintiff's Complaint. Responding further, Defendant explains that certain members of the union became employees of Plaintiff to perform certain work contemplated by the subcontract and prime contract.

101.

Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 101 of Plaintiff's Complaint.

102.

Defendant denies the allegations of paragraph 102 of Plaintiff's Complaint.

103.

Defendant denies the allegations of paragraph 103 of Plaintiff's Complaint.

104.

Defendant denies the allegations of paragraph 104 of Plaintiff's Complaint.

105.

Defendant incorporates its responses above to paragraphs 1 through 104 of Plaintiff's Complaint.

106.

Defendant denies the allegations of paragraph 106 of Plaintiff's Complaint.

107.

Defendant denies the allegations of paragraph 107 of Plaintiff's Complaint.

Defendant further denies each and every prayer for relief, allegation, and claim in Plaintiff's Complaint not specifically responded to above, including, but not limited to, the REQUESTED RELIEF clause and subparts a) through d) therein.

WHEREFORE, having fully responded to Plaintiff's Complaint, Defendant prays for the following:

(1)     That Plaintiff's Complaint be dismissed in its entirety with prejudice and judgment entered in favor of Defendant on all counts;

(2)    That all costs of this action be cast upon Plaintiff;

(3)    Trial by a jury of twelve persons as to all issues properly triable by a jury; and

(4)    For such further and other relief as the Court deems just and proper.

## II.    LAKOTA'S COUNTERCLAIMS AGAINST TRAILBOSS FOR BREACH OF CONTRACT AND TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS

1.

This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367, as they are compulsory counterclaims pursuant to Federal Rule of Civil Procedure 13.

2.

Prior to Lakota terminating Trailboss as the subcontractor for the Eglin AFB Project on March 11, 2020, Lakota and Trailboss entered into an agreement (hereinafter referred to as the "Agreement") to submit a proposal in response to a separate Department of Defense Request for Proposal (hereinafter referred to as the "RFP") – Solicitation Number N61340-19-R-0005 for the Fleet Readiness Center East Depot Level Maintenance project at Marine Corps Air Station Cherry Point, North Carolina (hereinafter referred to as the "Cherry Point Proposal").

3.

The RFP, the amendments thereto, and follow up communications from the Department of Defense were very clear and specific about which information and documentation must be submitted in response to the RFP in order to qualify for an award of a prime contract.

4.

Per the Agreement (which was similar to the Teaming Agreement referenced above), Lakota, as the qualifying 8(a) Program business, was to be the prime contractor for the Cherry Point Proposal.

21

5.

Per the Agreement, Trailboss was responsible for the preparation and submission of the Cherry Point Proposal, including, but not limited to, the submission of any and all information and documentation required by the RFP.

6.

Per the Agreement, Lakota was to supply liaison efforts and other support with respect to the Cherry Point Proposal.

7.

Per the Agreement, Lakota was to award a subcontract to Trailboss for certain specific work on the Fleet Readiness Center East Depot Level Maintenance project at Marine Corps Air Station Cherry Point, North Carolina if Lakota was awarded the prime contract for the RFP.

8.

After Lakota terminated Trailboss as the subcontractor for the Eglin AFB Project on March 11, 2020, Trailboss decided to shirk its contractual obligation to submit all the information and documentation required by the RFP.

9.

Specifically, despite having all the necessary information and documentation well in advance of the known due date, Trailboss failed to submit requested documentation that, as of the initial proposal due date, Trailboss's accounting system had been audited and had been determined adequate and suitable for administration of a cost-reimbursable contract.

10.

Trailboss was well aware of what the consequences would be for its failure to submit the aforementioned documentation.

11.

On September 21, 2020, Lakota received a letter from a Procuring Contracting Officer from the Department of Defense stating: "After conducting a careful evaluation of Lakota's proposal utilizing the evaluation criteria stated in Section M of the solicitation, the Government regrets to inform you that it did not select Lakota proposal for the competitive range." (See letter attached hereto as Exhibit "B").

12.

The letter went on to explain that Trailboss "did not provide evidence from the Defense Contract Audit Agency (DCAA), other federal civilian audit agency, or a private accounting firm that, as of the initial proposal due date, the offeror's accounting system has been audited and has been determined adequate and suitable for administration of a cost-reimbursable contract," that this "rendered the offeror's proposal UNAWARDABLE in accordance with RFP Section M, Part B, 2.4 (xv)," and that "[a]s a result, the proposal was removed from the competitive range, will not form the basis for award, and will not be referred to the Small Business Administration for a Certificate of Competency determination."

13.

Trailboss's failure to submit the requisite information and documentation with the Cherry Point Proposal was intentional and done in retaliation for Lakota terminating Trailboss as the subcontractor for the Eglin AFB Project.

## **COUNT I - BREACH OF CONTRACT**

14.

Lakota repeats and realleges the allegations contained in paragraphs 1-13 of its Counterclaims.

15.

There was consideration for the Agreement and it was in all respects a valid and binding contract between Lakota and Trailboss.

16.

In addition to the terms and conditions of the Agreement, Trailboss also owed Lakota a duty of good faith and fair dealing with respect to the Agreement and the Cherry Point Proposal.

17.

Trailboss's intentional failure to submit the requisite information and documentation in support of the Cherry Point Proposal was a willful and bad faith breach of its duties under the Agreement, including, but not limited to, its duty of good faith and fair dealing.

18.

Lakota fully performed its portion of the Agreement, and in no way breached any of its duties or obligations thereunder.

19.

Lakota could have been awarded the prime contract for the RFP had it not been for Trailboss's breach of the Agreement.

20.

Trailboss's breach of the Agreement, and Lakota's resulting loss of the opportunity to be awarded the prime contract for the RFP, caused Lakota to incur significant damages, for which Lakota is entitled to recover.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS

21.

Lakota repeats and realleges the allegations contained in paragraphs 1-20 of its Counterclaims.

22.

Trailboss's actions, as explained above, constituted improper and wrongful conduct, which it was without privilege to commit.

23.

Trailboss acted purposely and with malice with the intent to injure Lakota.

24.

Trailboss caused the Department of Defense to fail to enter into an anticipated business relationship with Lakota.

25.

Trailboss's tortious conduct proximately caused damage to Lakota, as will be further proven at trial.

## COUNT III – ATTORNEYS' FEES

26.

Lakota repeats and realleges the allegations contained in paragraphs 1-25 of its Counterclaims.

27.

Trailboss has acted in bad faith and has caused Lakota unnecessary trouble and expense.

28.

Lakota is entitled to recover from Trailboss its expenses of litigation, including reasonable attorney's fees, under O.C.G.A. § 13-6-11, Federal Rule of Civil Procedure 54, or other applicable law, in an amount to be proven at trial.

WHEREFORE, Lakota prays for the following:

1)   That Lakota have judgment against Trailboss for all damages caused by its breach of contract and tortious interference, including Lakota's expenses of litigation;

2)   Trial by a jury of twelve persons as to all issues properly triable by a jury; and

3)   For such further and other relief as the Court deems just and proper.

Respectfully submitted, this 10th day of May, 2021.

*/s/   H.J. Strickland, Jr.*
H.J. STRICKLAND, JR.
Ga.  State Bar No.  004450
CHRISTOPHER J. ARNOLD
Ga. State Bar No. 992314
R. MATTHEW SHOEMAKER
Ga. State Bar No. 339367
JORDAN B. ELLIOTT
Ga. State Bar No. 861627
*Attorneys for Lakota Solutions, LLC*

JONES CORK, LLP
435 Second Street, Suite 500
P. O. Box 6437
Macon, Georgia  31208-6437
(478) 745-2821 – *telephone*
(479) 743-9609 – *facsimile*
jay.strickland@jonescork.com
chris.arnold@jonescork.com
matt.shoemaker@jonescork.com
jordan.elliott@jonescork.com

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this date served a copy of the foregoing ANSWER,

AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANT LAKOTA

SOLUTIONS, LLC upon the following counsel of record, pursuant to Federal Rule of Civil

Procedure 7.1, via the CM/ECF filing system:

**T. Joshua R. Archer**
Balch & Bingham LLP
30 Ivan Allen Jr. Boulevard N.W., Suite 700
Atlanta, Georgia 30308
jarcher@balch.com

**Shaun C. Kennedy**
555 17th Street, Suite 3200
Denver, Colorado 80201
sckennedy@hollandhart.com

**Michael J. Carrigan**
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, Colorado 80201
mjcarrigan@hollandhart.com

This <u>10th</u> day of May, 2021.

*/s/   H.J. Strickland, Jr.*
H.J. STRICKLAND, JR.
Ga. State Bar No. 004450
*Attorney for Lakota Solutions, LLC*

JONES CORK, LLP
435 Second Street, Suite 500
P. O. Box 6437
Macon, Georgia 31208-6437
(478) 745-2821 – *telephone*
(479) 743-9609 – *facsimile*
chris.arnold@jonescork.com